UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT D. TENNEY and
CARA TENNEY,

        Plaintiffs,

    v.

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY and DOES 1 to
40, inclusive,

        Defendant.
_____/

NO. CIV. S-07-2181 LKK/DAD

O R D E R

    Plaintiffs Scott and Cara Tenney have brought this action against defendant State Farm for underinsured motorist benefits. Plaintiffs' daughter died in a car accident in Utah while riding as a passenger in a truck driven by her cousin and owned by her grandfather. Plaintiffs previously recovered the liability limits of one policy covering the cousin and another policy covering the grandfather. Plaintiffs now seek to recover $100,000 in underinsured motorist benefits from their own State Farm policy, which covered a vehicle that they owned and kept in California.

1

The parties assert that initially what is at issue is whether the policy is governed by California law -- which permits set off of amounts received by the insured from tortfeasors or other third parties -- or by Utah law -- which prohibits set off under certain circumstances. Even assuming that Utah law governs the policy, however, the court finds that the policy does not fall within the circumstances where set off would be prohibited. Accordingly, the court grants defendant's motion for summary judgment and denies plaintiffs' motion for summary judgment.

## I. Facts[1]

Plaintiffs' daughter, Katie Tenney, died as a result of a single car automobile rollover accident that occurred on January 3, 2003 in Utah. Pls.' Statement of Undisputed Fact ("PSUF") ¶¶ 1-2. At the time of the accident, Katie was a resident of California traveling to Utah for college. PSUF ¶ 4. Plaintiffs were also residents of California at the time of the accident but have since moved to Utah. PSUF ¶ 5.

Katie was the passenger in the vehicle and her cousin Marc Stemig was the driver. PSUF ¶ 6. The vehicle had been loaned to them by their grandfather Arnold Conley, Jr. Id. The incident was caused by the sole negligence of Marc Stemig. PSUF ¶ 7. On December 13, 2003, plaintiffs brought a wrongful death action against Mr. Conley and Marc's father, Patrick Stemig. Defs.' Statement of Undisputed Fact ("DSUF") ¶ 2. As a result, plaintiffs

---

[1] The facts are undisputed.

received a settlement of $200,000, which consisted of $100,000 paid under a liability policy issued to Mr. Conley, and $100,000 under a liability policy issued to Patrick Stemig.[2] Id.

At the time of the accident, plaintiffs carried liability insurance issued by defendant State Farm. PSUF ¶ 9. The policy was divided into five sections, two of which are relevant here: "Section I -- Liability" and "Section III - Uninsured Motor Vehicle." The section governing liability contained the following provision:

> **Out-of-State Coverage**
>
> If an insured under the liability coverage is in another state . . . and, as a nonresident, becomes subject to its motor vehicle compulsory insurance, financial responsibility or similar law:
>
>   a. the policy will be interpreted to give the coverage required by law; and
>
>   b. the coverage so given replaces any coverage in this policy to the extent required by the law for the insured's operation, maintenance or use of a car insured under this policy.

PSUF ¶ 23.

The section governing uninsured motor vehicles provided underinsured motorist coverage in the amount of $100,000 per person/$300,000 per accident. DSUF ¶ 8. It further required that money paid by tortfeasors or other third parties be discounted or "set off" from the amount that State Farm would otherwise be obligated to pay:

////

---

[2] Neither of the policies were issued by State Farm.

3

**Limits of Liability Under Coverage U**

> 7. If the damages are caused by an underinsured motor vehicle, the most we will pay will be the lesser of:
>
> > a. the limits of liability of this coverage reduced by the amount paid to the insured by or for any person or organization who is or may be held liable for the bodily injury, or
> >
> > b. the amount of the insured's damages for bodily injury reduced by the amount paid to the insured by or for any person or organization who is or may be held legally liable for the bodily injury.

DSUF ¶ 9.[3]

The policy was purchased in Dixon, California through a State Farm agent also located in Dixon. DSUF ¶ 5. The policy was issued from State Farm's Operations Center in Rohnert Park, California. DSUF ¶ 4. Mr. Tenney was the named insured under the policy. DSUF ¶ 5. At the time, he resided in Dixon with his wife and daughter, both of whom were also insureds under the policy. Id. Plaintiffs' daughter qualified as an insured because she resided primarily at plaintiffs' California home. DSUF ¶ 6. Throughout the term of the State Farm policy, the insured vehicle was registered in California, principally used in California, and mainly garaged at Mr. Tenney's residence. DSUF ¶ 7.

---

[3] For purposes of argument, the court will assume that the out-of-state coverage clause located in Section I of the policy (which governs liability) also applies to the terms of underinsurance coverage located in Section III of the policy. But see Frost v. Liberty Mut. Ins. Co., 828 S.W.2d 915, 922 (Mo. App. 1992) ("The liability insurance sections and the uninsured motorist sections are kept separate from each other throughout the policy. In context, it is clear that the language relied upon by [plaintiff] refers only to liability coverage.").

4

**II. Standard**

Summary judgment is appropriate when no genuine issue of material fact exists. Fed. R. Civ. P. 56(c). Such circumstances entitle the moving party to judgment as a matter of law. Id.; see also Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Secor Ltd. v. Cetus Corp., 51 F.3d 848, 853 (9th Cir. 1995).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. (citing Fed. R. Civ. P. 56(c)). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 522. If a party fails completely to produce proof of a necessary element of its claim, then this "necessarily renders all other facts immaterial." Id. In such circumstances, the court should grant

1  summary judgment "so long as whatever is before [it]
2  demonstrates that the standard for entry of summary judgment, as
3  set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.  If the
4  moving party meets its initial responsibility, the burden then
5  shifts to the opposing party to establish that a genuine issue
6  as to any material fact actually does exist.  <u>Matsushita Elec.</u>
7  <u>Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986); <u>see</u>
8  <u>also</u> <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S.
9  253, 288-89 (1968); <u>Secor Ltd.</u>, 51 F.3d at 853.
10      In attempting to establish the existence of this factual
11  dispute, the opposing party may not rely upon the denials of its
12  pleadings, but must instead tender evidence of specific facts in
13  the form of affidavits and/or admissible discovery material in
14  support of its contention that the dispute exists.  Fed. R. Civ.
15  P. 56(e); <u>Matsushita</u>, 475 U.S. at 586 n.11; <u>see also</u> <u>First Nat'l</u>
16  <u>Bank</u>, 391 U.S. at 289; <u>Rand v. Rowland</u>, 154 F.3d 952, 954 (9th
17  Cir. 1998).  The opposing party must demonstrate that the fact
18  in contention is material, i.e., a fact that might affect the
19  outcome of the suit under the governing law, <u>Anderson v. Liberty</u>
20  <u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Owens v. Local No. 169,</u>
21  <u>Ass'n of Western Pulp & Paper Workers</u>, 971 F.2d 347, 355 (9th
22  Cir. 1992) (quoting <u>T.W. Elec. Serv., Inc. v. Pacific Elec.</u>
23  <u>Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987)), and that
24  the dispute is genuine, i.e., the evidence is such that a
25  reasonable jury could return a verdict for the nonmoving party,
26  <u>Anderson</u>, 477 U.S. at 248-49; <u>see also</u> <u>Cline v. Indus. Maint.</u>

6

1 Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 1999).

2     In the endeavor to establish the existence of a factual
3 dispute, the opposing party need not establish a material issue
4 of fact conclusively in its favor.  It is sufficient that "the
5 claimed factual dispute be shown to require a jury or judge to
6 resolve the parties' differing versions of the truth at trial."
7 First Nat'l Bank, 391 U.S. at 290; see also T.W. Elec. Serv.,
8 809 F.2d at 631.  Thus, the "purpose of summary judgment is to
9 'pierce the pleadings and to assess the proof in order to see
10 whether there is a genuine need for trial.'"  Matsushita, 475
11 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's
12 note on 1963 amendments); see also Int'l Union of Bricklayers,
13 Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405
14 (9th Cir. 1985).

15     In making its determination, the court is to believe all
16 evidence of the opposing party, see Anderson, 477 U.S. at 255,
17 and the court must draw all reasonable inferences from the facts
18 placed before it in favor of the opposing party, see Matsushita,
19 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S.
20 654, 655 (1962) (per curiam)); see also Headwaters Forest Def.
21 v. County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).
22 Nevertheless, the court does not draw untethered inferences, but
23 instead relies on the opposing party to produce a sufficient
24 factual predicate for such inferences.  See Richards v. Nielsen
25 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
26 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

1   Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. Analysis

The parties dispute whether California or Utah law should govern the policy. Whereas California law permits set off, Utah law does not -- or at least not under certain circumstances. Compare Cal. Ins. Code § 11580.2(p)(4) & (5) (defining insurer's liability as "less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury") with Utah Code § 31A-22-305.3(2)(f)(ii)[4] ("Underinsured motorist coverage may not be set off against the liability coverage of the owner or operator of an underinsured motor vehicle."); see also Mercury Ins. Co. v. Vanswanseele-Walker, 41 Cal. App. 4th 1093, 1107 (1996) ("the Legislature has made a clear determination that the goal of [California]'s underinsurance system is not to make a victim 'whole,' but instead to ensure that underinsurance benefits are available when an insured has not recovered equivalent amounts from all tortfeasors liable for the injury.").

The court will assume without deciding that Utah law

---

[4] At the time of the accident, the pertinent language was located at Utah Code section 31A-22-305(8)(b).

8

governs the State Farm policy.  Even so, Utah's prohibition against set off is not triggered unless certain conditions are first satisfied.  Utah Code section 31A-21-101, entitled "Scope of Chapters 21 and 22," expressly states that Chapters 21 and 22 of Title 31A (the latter of which contains the set off prohibition) apply to insurance policies that are:

> (a) delivered or issued for delivery in this state;
> (b) on property ordinarily located in this state;
> (c) on persons residing in this state when the policy is issued; or[5]
> (d) on business operations in this state.

There is no dispute between the parties that the State Farm policy cannot meet any of these conditions.  Mr. Tenney purchased the policy in California, and defendant issued and delivered the policy in California.  DSUF ¶ 4.  The policy covered a vehicle registered in California and principally garaged in California.  DSUF ¶ 7.  Both plaintiffs and their daughter were California residents when the policy was issued and at the time of the accident.  DSUF ¶¶ 5, 6, 10.  Plaintiffs do not argue that the policy at issue covered "business operations."

Nevertheless, plaintiffs argue that the cited section of the Utah code is not exhaustive, because there is no language expressly stating as such.  That reading is untenable.  The

---

[5] At the time of the accident, subsection (c) read: "on persons residing in this state when the policy is issued; *and* . . ." (emphasis added).  Subsequently, in 2006, the language was amended to read in the disjunctive.  Regardless of which version of the statute applies, however, the State Farm policy does not satisfy any of the enumerated conditions.

9

1  plain language of the section title ("Scope of Chapters 21 and
2  22") denotes that the four conditions enumerated below are the
3  only ones covered by the law.  Indeed, had the Utah legislature
4  intended the list to be non-exhaustive, it could have (and
5  likely would have) adopted language expressing that intent,
6  e.g., "including but not limited to."

7       Plaintiffs also argue that the second section of the
8  statute,[6] which carves out specific exemptions for insurance
9  policies that would otherwise be bound by Chapters 21 and 22,
10 supports a finding that the set off prohibition applies to the
11 State Farm policy.  Plaintiffs reason that under the maxim of
12 *expresio unius est exclusio alterius* (the expression of one
13 thing excludes all others), the fact that out-of-state contracts
14 are not specifically enumerated as an exemption means that they
15 should be included within the chapter's scope.  First, it is
16 noteworthy that this argument is precisely the opposite of what

---

[6] The section reads:

(2) This chapter and Chapter 22 do not apply to:

(a) an exemption provided in Section 31A-1-103;
(b) an insurance policy procured under Sections 31A-15-103 and 31A-15- 104;
(c) an insurance policy on business operations in this state:
   (i) if:
      (A) the contract is negotiated primarily outside this state; and
      (B) the operations in this state are incidental or subordinate to operations outside this state; and
   (ii) except that insurance required by a Utah statute must conform to the statutory requirements; or
(d) other exemptions provided in this title.

Utah Code § 31A-21-101.

10

1  plaintiffs argued above: that the first subsection (listing
2  covered policies) is non-exhaustive, because there is no
3  language indicating as such.  Indeed, if the court were to apply
4  the *expresio unius est exclusio alterius* maxim, it would support
5  a finding that the State Farm policy is not covered by the
6  chapter, because it is not expressly listed as a covered policy.
7  Second, the exemptions listed in this subsection appear to
8  narrow the types of policies that would *otherwise* satisfy one of
9  the four conditions enumerated in the first section.
10 Accordingly, even if the exemptions were read as non-exhaustive,
11 it would not resolve plaintiffs' basic problem: that the State
12 Farm policy does not fall under one of those four conditions.
13      In Travelers/Aetna Ins. Co. v. Wilson, 51 P.3d 1288 (Utah
14 Ct. App. 2002), the court found that where none of the four
15 conditions were satisfied, the statutory scheme set forth in the
16 chapter did not apply.  Although the court was potentially
17 faced with a choice of law issue with respect to set off, it
18 concluded that even if Utah law applied, plaintiffs would not be
19 covered under the terms of the statute.  Id. at 1292 ("[B]ecause
20 the policy at issue was not delivered or issued for delivery in
21 Utah, and was not for a vehicle ordinarily located in Utah, nor
22 for persons residing in Utah when the policy was issued, and not
23 for business operations in Utah, the statute upon which the
24 [plaintiffs] rely is inapplicable.").  Wilson is consistent with
25 this court's interpretation of section 31A-21-101.  See also
26 Desario v. State Farm Mut. Auto. Ins. Co., 127 F.3d 1109 (10th

Cir. 1997) (unpublished table decision) (refusing to apply provisions in Chapter 21 where requirements of section 31A-21-101 had not been satisfied); <u>Adams v. Gen. Accident Assurance Co. of Canada</u>, 133 F.3d 392 (10th Cir. 1997) (unpublished table decision) (refusing to apply provisions in Chapter 22 where requirements of section 31A-21-101 had not been satisfied).

Plaintiffs' reliance on <u>Deardroff</u> is unavailing. <u>California Cas. Indem. Exch. v. Deardroff</u>, 157 Cal. App. 3d 548 (1984). There, the court applied Minnesota law, which permitted the stacking of underinsured motorist benefits, to an accident in Minnesota involving Californians driving a California insured motor vehicle. As noted above, however, even if the court were to find Utah law controlling, plaintiffs would not benefit from its application because their insurance policy does not fall under any of the four conditions enumerated in Utah Code section 31A-21-101(1). In <u>Deardroff</u>, by contrast, there was apparently no dispute that if Minnesota law governed the accident, the plaintiffs would be entitled to stack underinsured motorist benefits. <u>Id.</u> at 552 (noting that state statute had been interpreted by Minnesota Supreme Court to "entitle" both Minnesotans and nonresidents to stack benefits).

Accordingly, the court finds that even if Utah law were applied to the policy, plaintiffs would not be entitled to the underinsured motorist benefits.[7]

---

[7] Defendant also argues that uninsured motorist coverage is optional in Utah, Utah Code § 31A-22-302(1), whereas the out-of-

12

**III. Conclusion**

For the reasons explained above, defendant's motion for summary judgment is GRANTED and plaintiffs' motion for summary judgment is DENIED. The clerk's office shall close the case.

IT IS SO ORDERED.

DATED: June 17, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

state coverage provision applies only to compulsory insurance. While such coverage may be optional, that does not preclude Utah from regulating its terms where such coverage exists. In light of the court's foregoing analysis, the court need not reach this issue.

Further, defendant argues that under Utah law, nonresidents are not required to have insurance complying with Utah's minimum coverage requirements unless they own a motor vehicle and have been present with the vehicle for more than 90 of the last 365 days; otherwise, they need only maintain the insurance required by their place of residence. Utah Code § 41-12a-301(2)(b). The also court need not reach this issue.

13